I'm aware that there are cross-appeals in this matter, so why don't we start with Ms. Dean. So just so I'm clear, even though Ms. Dean starts first, I'm aware that there are cross-appeals in this case, so you can have rebuttal as well going to the preliminary injunction issues. But keep track of your arguments. The clock represents the total argument time that you have. May it please the Court, Deputy Attorney General Donna Dean, on behalf of the defendants, appellants, appellees, Christine Baker, Dusty Oberpeck, and Ronnie Kaplan. I wanted to quickly ask, too, do you want me to only address the preliminary? No, address all issues. Got it. Thank you. The statute at issue here, SB 863, was enacted in order to handle a crisis in the workers' compensation system in California. The system was being choked, as represented in the report by the California Health and Safety and Workers' Compensation Commission. The system was being choked by the enormous number of liens being filed, as well as a backlog that was happening. In this case, the SB 863 easily passes the rational basis test under equal protection, and the trial court incorrectly held that it did not, incorrectly enjoined the assessment of the lien activation fees against the workers' comp claimants. And just to touch on the elements briefly, this is an economic legislation, and it is subject, there's a perception of validity to this legislation. The plaintiffs have to negate every conceivable basis for this legislation and for the distinction between the exempt entities and the non-exempt entities with respect to paying the fee. There's – Well, I think the retro to the nature of the fee provision gives rise to some concern. What is your best argument that it's acceptable to make the fee retroactive as well as prospective? Well, the best argument is that the problem with the system is in part this backlog, but in part the enormous number of liens being filed. And the legislature was concerned with frivolous liens being filed, and in particular being filed by direct providers like the plaintiffs in this case. In order to fix the system, the legislature imposed the fee, the lien activation fee, and a prospective lien filing fee. This puts the – shifts the cost burden to those who had already liens in place and those who are filing new liens. Had they only made it prospective, then this burden of the cost of this system would be shifted solely to those filing new liens and not to those that have got old liens that are being activated later for adjudication. Can you explain or articulate the exact reason why the legislature chose to treat the plaintiffs here differently from exempt entities such as insurance carriers and HMOs? There – well, the evidence that's in the record, and again I want to point out that no evidence is required to be in the legislative record. Any rational conceivable basis can apply. But the record showed here that direct providers of medical services were more like they were the biggest lien filers. They were the biggest friction in the system. They also were – they have a greater incentive to file overcharging liens. There was this issue with the zombie liens, as the report called them. These are liens that were – the employer or the insurer had paid the medical fee schedule amount, and then the liens that are sold by the direct providers to an assignee are then raised again in order to recover above the fee schedule. So there were these problems with the direct providers and these concerns that they were the ones that were causing this backlog, causing frivolous liens to be filed, and this is a means to deter the frivolous liens, as well as to charge essentially a user fee for those that are coming into the system in order to adjudicate those claims. Is that a distinction based on wealth, income? Based on? Wealth or income, that the exempt entities have a higher level of wealth than the others? No, it's a distinction based on the different relationship that those entities have, that the exempt entities have with the injured workers in California versus the direct medical providers or medical legal providers. The insurers, for instance, are under contractual obligation to treat their insurers, regardless of whether it's a workplace injury or not. And the distinction between the exempt entities and the non-exempt entities is also demonstrated throughout the labor code and the workers' compensation system. They are treated differently. It's not a wealth difference. It's a difference in how their claims would be perceived and processed. For example, the idea that the insurers have no incentive to overcharge for their lien claims. They're going out of pocket in order to provide services, whereas the medical providers, there was evidence in the record before the legislature that the medical providers do have that incentive because they can overcharge, they can file a lien claim and try to get a settlement in order to have the employer or the insurer avoid the friction cost of the claim. I want to be able to touch a little bit, too, on the takings argument. Before you move to takings, let me ask you this. Can you articulate the legitimate governmental interest involved here? The government interest involved here is in fixing this system that was, as the report showed, was being choked by these lien claims. Clearing the backlog, as the district court identified? It's not just clearing the backlog. It's also discouraging frivolous liens. It's also encouraging settlement of liens rather than coming into the system in the first place. And as we've noted in our briefs, the ---- No, I'm focusing on the retroactive nature of the fee, is to basically clear out the backlog and then prospectively imposing a fee so that the system as a whole is fixed. Well, clearing up the backlog is part of it, but there's also many of these lien claims and even some of the plaintiff's claims go back many years, and some of them are for very small amounts. And whether those would ever be brought up for adjudication is unclear, but this idea of things like such as these zombie liens that are coming back to life later, that's, again, that's where you've got these frivolous liens that are coming in and clogging the system and causing insurers and employers to settle rather than pay the cost of staying into this system. The argument that exempt entities have a stronger incentive to control costs, they're contractually bound to provide services, that's a pretty good argument. And as I understand it, plaintiffs argue that it was waived. How do you respond to that? Those arguments were made in the district court. They're in the record before the district court. The argument, I think, that they're saying was waived was there's some additional information that's been presented by the State Compensation Insurance Fund, but that additional information is public record information. And, again, under the rational basis test, any conceivable legitimate governmental interest will support rational basis and support this statute against an equal protection claim. But those claims were argued, those arguments were made in the district court. Let me try this out on you. Am I correct that the district court did not reach the merits of the equal protection claim? It discussed it in the context of the preliminary injunction, but specifically deferred as opposed to deciding the other claims, the due process claim and the taking claim, right? I'm a little confused by your question. Okay. Let's try it again. The district court in this case made a decision regarding the taking and due process claim, correct? It addressed the merits, yes, but did not address the merits of the equal protection other than in the context of issuing the preliminary injunction and discussing whether there was likely to be success on the merits, correct? Is this not, then, a case that ought to be remanded to the district court because it is not a final judgment? He has left open a very significant issue, and the Supreme Court has told us we should not be taking piecemeal appeals, and that's what this is. It's an appeal from a preliminary injunction, which is an appealable order. And we can address that, but we can then remand to address the equal protection claim, which she has not fully addressed. I've also asked this Court to consider, under pendant jurisdiction, reversing the Court's denial of the motion to dismiss with respect to the equal protection jurisdiction of the equal protection claim on the same grounds. And here it's really an issue of law, and it's and it's there's nothing factually for the Court below to have to decide for this Court to be able to make that decision. Well, we don't have to. I think we can decide it as a separate matter. So I think question number one could be, was there an abuse of discretion in issuing the preliminary injunction order and then leaving the motion to dismiss issue for the district court to address? That's correct. You'd then be able to take a separate appeal from that, of course, depending on how the judge's ruling goes. Correct. But as I said, since it's here and in the interest of economy and justice, I would consider both at this time. And in particular, since the same district court judge, when presented with the information in a different case pending, a related case pending before him, was indicating that he might change his mind about his ruling on equal protection. All the more reason to send it back so we can give it full attention. I want to have a little bit of time for the takings just quickly. The plaintiffs ask for an adjudication related to takings on the grounds that this is a lien, and therefore it's a protected interest under the Fifth Amendment. But the case is that the plaintiffs cite are very different from a workers' compensation lien. The workers' compensation lien isn't a traditional lien in the sense of a mortgage, the materialman's lien, or the UCC1 financing interest in personal property. There's no property to which this lien attaches. A lien is somewhat of a misnomer. Really what it is is a claim for compensation to be paid out of either the employer or the insurer. It's a claim to be paid under that. And it's similar to a cause of action. It's not vested until a final judgment. So this is not a – and therefore it's not vested and it's not a proper interest under the Fifth Amendment. The lien or the claim, as you call it, does not go against the injured worker's compensation. They cannot – it can't be offset against their temporary or permanent disability. It actually comes out of the responsibility of the employer or the insurer to pay for the treatment of the injured worker. And in this case, they've made a distinction between medical and medical legal to argue that maybe they're different and should be treated differently. But both of them require adjudication in order to be – in order to be final and a vested right. And that's why – that's why under the Takings Clause this is not a takings because there's no property interest to be taken. Well, why aren't these like accounts receivable? Because they're not – there's not a direct relationship between the provider, the medical provider here, and the government or the insurer or the employer who's paying the claims. It's something that has to be adjudicated. And again, the idea that it's a taking, too, is really – these claims are not being destroyed or not being wiped out. They're simply being subject to a user fee in order to get into the system to be able to help offset the cost of this system. So it's very different from a lien or – and I would say it's also not the same thing as an accounts receivable either. It's – if you have an accounts receivable and you have to go to court to collect it, you still pay a filing fee. And that's the issue here is it's a filing fee, a user fee, and not a taking of the actual claim itself. Well, the lien is also contingent, right, until the underlying action is resolved. Correct. And until it's adjudicated and until all of the contingencies are met, it's not a vested property interest. Do you want to save the rest of your time? Yes, I do. Give Mr. DeBorsen a chance to share some of that time. Your Honors, I'm Eric DeBorsen. I'm Eric Borsten from Horvitz & Levy representing State Compensation Insurance Fund. And I'd like to take the opportunity to address some of the questions you've already posed to the government. First, why do the legislature treat exempt entities differently? I think the government did a pretty good job saying why. It's in the liens report. It's in the bill analysis. The problems that were viewed in this system that were caused by the improperly filed liens, those were viewed as liens filed by service providers, by direct service providers. If you look through the liens report, if you look through the legislative history, you don't see examples of any of the exempt entities filing or having these liens that were perceived as causing the problem. So Senate Bill 863 was a rational response. I'm not sure. They weren't filing liens or they weren't filing fraudulent liens? They weren't filing the type of low-quality or the liens that tended to be lower-quality that were targeted by this activation fee. They were filing liens. In State Fund's experience, though, the exempt entities file an extremely lower number of liens than the non-exempt entities. In the lien separate conference in 2012, the vast majority of them were filed by the non-exempt entities. Ten out of the top 11 e-filers of liens were non-exempt entities. The five biggest lien holders in California are non-exempt entities. So plaintiffs' attempt to portray this as the big guy versus the little guy, I think, misses the mark. The five biggest lien holders in California are non-exempt entities that would have to pay these liens. I'm sorry, that would have to pay the activation fee, subject to potentially getting it back if they make a settlement offer that's then exceeded by their recovery. And as the government also alluded to, exempt entities are treated differently in the workers' compensation system in other aspects. California Labor Code 4903.1A4 says that when an exempt entity has a lien and the worker settles the case, the exempt entity's lien is automatically reduced by the percentage of the worker's recovery to the total recovery. On the other hand, a direct provider lien cannot be automatically reduced that same way. Those liens have to go to trial. So that's a feature of the workers' compensation that treats these exempt entities differently from the non-exempt entities in a way that's advantageous to the non-exempt entities. To answer Judge Wynn's question, what's the legitimate government interest, clearing the backlog is part of that interest. The backlog hurts everyone in the system. It hurts the workers who don't have their claims adjudicated as quickly as they might otherwise be. It hurts the workers' compensation insurers who are sometimes forced into settlements of frivolous or borderline frivolous liens just to avoid the cost of litigating them. It was estimated to be $1,000 per lien. Even the liens report recognized that the overburdened court system encourages settlement almost to the point of coercion. And that's on excerpts of Record 217. So that was part of the problem that this Senate Bill 863 was aimed to address at. It was a comprehensive system, comprehensive form. Part of that reform was to increase permanent disability benefits by 30%. Part of it was to put in this activation fee and the filing fee. And part of it was to make other changes like adding independent bill review and independent medical review. So for plaintiffs to kind of pick out one aspect of this comprehensive reform is, frankly, a little bit unfair. Kagan. I'm not sure I understand how the system works with respect to the direct providers. They provide the service. Yes. They haven't been paid. They submit their claim to the employer. Some period of time should go by. There's perhaps a dispute. They're not paid. Then they should file the lien. So they have to file the lien in order to get paid? They don't always have to file the lien in order to get paid. If there's a billing dispute and there's a refusal to pay, then they would have to file the lien. Have to file the lien. Yes. But also to allude on a point made by the government. Can I? I'm sorry to interrupt you, but I want to ask you a new question if I can. Is the State also challenging the decision of the preliminary injunction? The district court's decision? Absolutely. Which of the factors, which one or more of the factors do you believe the district court got wrong? Well, I'd say the likelihood of success on the merits is the primary factor that the district court got wrong. The district court seemed to view this as a close issue the first time it was presented with the case. Again, in a related case, the district court seemed to think that he would be reconsidering this issue with the fuller arguments that we've developed more fully here. But that is, far and away, the most important issue. And, in fact, that's why. Is that the only one that was raised in the briefing on appeal that was challenged on appeal? I believe that is the only reason that was challenged on appeal. I don't know if that was in the government's brief. You can ask. You'd be in favor of a remand or let the court address the issue of equal protection and the others as well before? Well, the court did spend an extensive time discussing equal protection. I mean, that was the focus of the district court's opinion was its view on these equal protection issues and why it thought it raised. It didn't discuss the takings? No, no. It discussed the takings also, and it decided that there was no property interest, and for that reason granted the motion to dismiss both with respect to the takings claim and with respect to the due process claim. But with respect to the equal protection claim, I know there was some question about whether the court addressed it. The court did address it. The court made its views perfectly clear. It denied the motion to dismiss and granted the preliminary injunction. These are legal. These are legal issues. It did not decide with finality the equal protection claim? Well, it did not decide it in the sense that it entered a permanent injunction, but it decided it gave its legal conclusions that this case presented close enough issues that it would grant the preliminary injunction. And I submit that that decision was an error, and this court is in a position to correct that error because whether a statute violates the equal protection clause is a legal determination. It doesn't depend on the evidence that's in the record. The legislature is permitted to rationally speculate. The facts that the legislature can speculate to be true don't even have to be true. All that matters is whether the legislature could rationally speculate that they were true. And that's in the FCC v. Beach Communications case. That's in Heller v. Doe. That's just, I guess, equal protection 101. So you've actually taken or questions actually took you well into the State's rebuttal time. But I'll give her a minute or two to respond to any issues that may come up from Plaintiff's counsel's argument. But we thank you for your argument and contribution as well. Thank you. May it please the Court. Glenn Summers on behalf of the Appellees and Cross Appellants, Angelotti, Chiropractic, et al. First, Your Honors, I'd like to address the equal protection issue. And I'd like to start with the standard of review, the applicable legal standard here. We obviously agree that the district court did the right thing in granting the preliminary injunction. But we believe that he should have applied strict scrutiny and that this Court should make that clear in this case. And I don't think this is a very complicated question. Well, isn't this an economic regulation? It is not, Your Honor. This is essentially a fee that is required to access the judicial system. The Workers' Compensation Appeal Board has exclusive jurisdiction over claims for compensation by providers of medical or medical legal services to workers' compensation claimants. Under California law, they are precluded from going to court or from seeking compensation in any other way. The WCAB is performing a judicial function, and you must go through the WCAB to ever get to a court. So it is a judicial function. This is essentially a retroactive filing fee as if you had to pay a fee. You can resolve it outside of court, though, right? You can resolve any dispute outside of court. But the question of the access to the judicial system is always, what if you need the judicial system? What if you can't resolve your dispute? The idea that you're not denied access to the judicial system because you can work out a deal, that is a silly, silly argument. These are claims for compensation where people relied to their detriment, provided valuable goods and services, built a life, a career, and built up an accounts receivable. The district judge expressly found that these were the equivalent of an accounts receivable. In the case of Joyce Altman, one of the plaintiffs in this case, she has 12 years' worth of liens worth hundreds of thousands of dollars. This is her entire livelihood, and without it, she's done. And what the state has done is they have said, we are going to discriminate. This is discrimination. We're going to require a fee to access the judicial system for some people, but not all. And we're not making an exception for those who are unable to pay with the idea being that we need to make sure everyone has a fair shot at getting into court. They're not doing that. They're doing the opposite. They're saying to the independent providers, those least able to pay, those who have built a livelihood on this business because the state urged them to do so, you cannot come in now unless you pay. We have plaintiffs with claims as low as $57. They're supposed to pay $100 to come into court. But the key thing here, Your Honor, is it is hornbook law that when a statute discriminates either on the basis of a suspect class or in a way that impairs the exercise of a fundamental right, it is subject to strict scrutiny. It is also... If we disagree with you that it's strict scrutiny, do plaintiffs then lose? No, of course not. The district court correctly found that this discrimination does not survive rational basis review. Let me make a couple of points on that. First, none of the arguments you're hearing here were presented to the district court. That's why in the second case that was later filed where finally State Fund jumped in, Judge Wu said, well, I'm hearing a whole bunch of new arguments now that were never presented before. I don't know if that would change things. And of course they filed their brief after the reply brief had been submitted by the plaintiff. So the plaintiffs never had a chance to respond to Skiff's arguments below. Okay. But the status of the procedural status of this case in the district court is that there was a preliminary injunction entered against the enforcement of the policy. That was on the ground of what? Equal protection and equal protection alone, Your Honor. And the takings claim was dismissed? The takings claim was improperly dismissed, Your Honor. And the court viewed that as a closed question but I think wanted it to come up on appeal at this point in time. It was expressed. It was made very clear in its tentative ruling on November 7th and at the hearing that it wanted to make sure that the threshold question of whether these liens are a property interest wanted that to come up in this case rather than wait. And it expressly stated on the record that it was a closed question but that that would get it the fastest route to resolution of that question. Now, we believe that the Let me, before you move away from the takings claim since you're on that point, given that the value of the lien really depends on the success and the extent of the success of the underlying claim, how is it a vested property interest? And do you have what you consider to be the best case for that proposition? Absolutely, Your Honor. I think this Court's jurisprudence is starting to, and this is the pivotal point here, make a wrong turn. The question of whether there's a property right is not whether there's some contingency to recovering or to getting value from that property interest. The question is whether the circumstances are such that they create a legitimate claim of entitlement or a certainty of expectation. And the Court, in Bowers and in Enquist, looked at the question of whether consideration had been paid, whether an explicit promise had been made, and in Bowers also the question whether there was detrimental reliance. And in this case, we have all of those factors. Consideration was paid. These plaintiffs gave up blood, sweat and tears, money, hard dollars, goods and services because the State created a system that's been around for 75 years that assured them compensation. We have consideration, and we have a statutory regime that created a promise, an expectation. But the expectation of recovery is tied into the success of the underlying claim. So what's your best case that it's a vested property interest? The best case is Pan Am, Causey v. Pan Am, where in a panel in this Court, an opinion authored by Judge Fletcher expressly stated. Which Judge Fletcher? Betty Fletcher. Expressly stated, there is no question that claims for compensation are property interests that cannot be taken away for public use without compensation. And that was express holding. The Court later said, we hold only one that plaintiffs have a right to compensation if their claims have been unreasonably impaired by the treaty, and two, that the Court of Claims has jurisdiction to make that determination. So we have an express holding. That holding was quoted verbatim and reaffirmed in Enquist and in Bowers. In Enquist, the Court said punitive damages are different. The Court said punitive damages aren't to compensate and you can't ever expect them because they're purely discretionary. Bowers also distinguished the situation. In Bowers, we had a voter initiative in Oregon that said, that gave landowners tremendous remedies if a land use regulation was imposed against them. And three years later, four years later, the state passed another voter initiative that withdrew that. And in Bowers, the Court said, this is a gift. This was something that was benevolently provided by the state, and the state has the right to take it away. There's been no consideration paid for these remedies. There was no explicit promise. And it noted that in the waivers, there were waivers of the land use requirements that were provided, that there was an express disclaimer that they had any right to engage in the particular land use activities. I'm having a little problem understanding why we're here. I'm a little troubled by the argument that this is part of a very comprehensive scheme and comprehensive legislation that was intended to fix a lot of things. And we're focusing on one little aspect of it. And I'm wondering if you could address that. Absolutely, Your Honor. That goes to the second part of the Takings Inquiry. There are two phases to the Takings Inquiry. First, is there a property interest protected by the Takings Clause? If so, we get to the second stage, which is does a regulation so unreasonably interfere with distinct investment-backed expectations and so on that we will deem it to be a taking? And when we have a complex regulatory regime, we have to, if the property interest is affected, deal with that second factor. But the district court never got to it here. No, I was actually concerned about the equal protection part of it, because the equal protection says you're saying they shouldn't be treating us differently, and they shouldn't be imposing this on us. And the this is a big scheme, and there's an argument here. The argument is that they're that you're you should be treated differently because because because because the legislature perceived that that that these your I assume they're doctors and medical providers and that they were there were some false liens being filed, and they should be treated differently. And I just what why why is that wrong? Let me address a couple aspects. Why is that not rational? First, Your Honor, there are no there were no legislative findings. There's essentially no legislative history. This was done this whole amendment was done in about a week. The lien report never recommended a retroactive activation fee. It did not recommend an exemption. Didn't didn't find any basis for an exemption. The only exemption it recommended is it recommended a streamlined procedure for small liens to make sure that meritorious liens of small value were not effectively wiped out. And what they did in this law is they they perverted everything that was in the lien report that supposedly that supposedly gave rise to this this legislation. And and by the way, I should give you the site to the It's not our business to say that the legislature was wrong in its assessment of the situation. But Was this not and people aren't quiet in in California. They they go to Sacramento frequently and This was a backroom deal done with no one knowing and there's nothing there's no documentation where any of this came from. We've scrubbed the legislative history. There's nothing. But the important thing here, Your Honor, is this is all made up and they didn't try to make it up in the district court where it could have been tested with evidence because this is what they were saying is not true. Two of the biggest lien followers in the state are Kaiser and Blue and Anthem Blue Cross, HMOs that are exempted. And when they provide services to someone, they have every incentive to sock it to the workers' compensation system. If it turns out the guy was working on the job, they go with the highest rate possible. They go with wherever something gives them the most recovery. Why? They have an economic incentive to. It's no different than the economic incentive of a provider of medical benefits. And the problem is all of this being raised on appeal, we didn't have a chance, we never had a chance to respond to it in the district court with actual evidence to show that this was made up, that there was nothing to it. This is stretching rational basis review to the limits. What is made up? I'm a little confused by that and so I'd like you to clarify that because, you know, we don't require legislative findings or empirical tests. I think that's a dangerous road to tread on. And the test is really any conceivable basis, assuming that it's rational basis review. Any conceivable basis for the classification could support rational basis. In the record, there are indications that 10 of the top 11 e-filers of liens were direct providers, and counsel indicated five biggest lien holders are non-exempt. I think that's a I think that's in the record. So what part of it is made up? Are you talking about the arguments or the factual basis that counsel is relying on to indicate that there is a reason why certain organizations are treated as exempt? What is made up is all of the arguments for why they believe that medical providers should be treated different than the insurers. But by the way, that is not the definition. They believe. Are you talking about the legislature or what? State fund, which is almost the real party in interest here. State fund is the largest provider of workers' compensation insurance. They're the big insurer. Them and the other insurance companies, they're the real beneficiaries of this statute because it wipes out claims that they otherwise have to pay. Under the rational basis review, the State is under no obligation to put forward evidence supporting its reasoning for the $100 fee. What's wrong with the finding by the district court or the reason propounded by the State that plaintiffs file a greater percentage of invalid liens? That's a good reason for the statute. There's no evidence of that. It simply made up. I mean, if rational basis review means they can come in and say anything they want to say, well, there's nothing in the legislative history to say that. There's nothing, no legislative finding to that effect. There's nothing in the lien report that says that. I'm looking at ER 263 under the heading frequent flyers. Right. And it has an analysis of the e-filed data. I don't think that your argument is that that's made up, or is it? The Chiswick lien report was never the court never took judicial notice of it. We know that it exists, but it's not it has never been established to be truthful or accurate. But we can use it to say maybe the legislature believed some of this stuff. There's no question that there are there's abuse on both sides here. If you look at the Society of Industrial Medicine, they would say the problem, the big problem is that insurers routinely deny all the claims. Well, but it's not our job to try what to try to establish what the legislature had in mind. As Judge Nguyen just asked you, if there is a conceivable, understandable, rational basis, we have to uphold it. I would submit because this argument was raised really for the first time on appeal, and all of the evidence in State Funds Brief and much of what is cited in the Defense Brief was never presented to the district court before, if this court concludes that rational basis review applies, the court should remand to the district court in the first instance to consider the entirety of the record, allow the parties to present evidence, and as Judge Zahari has noted, the court never reached the merits of the Equal Protection Claim. It only reached the question whether there was a likelihood of success on the merits. And the case, if the court believes rational basis review should apply and that these arguments should be considered, it should remand to the district court to consider them in the first instance. And it can do that both in terms of whether to allow the preliminary injunction to continue and also the  Ginsburg. We don't have to remand. If we were to uphold the dis the it would go back it goes back no matter what. Correct, Your Honor. And I would submit that the court should affirm the district court's preliminary injunction. This court did not abuse its discretion here. On the record before it, it was clear that a preliminary injunction should be entered. It found overwhelming evidence on the irreparable harm and the balance of the equities. It found that the that this would ruin the plaintiffs. Your opponent says on a different record in a different case the district court maybe reached a different conclusion. The district court never reached a conclusion in the second case because State Fund filed its new arguments in an amicus brief after all the briefing was done in that tag-along second case. Understood. And the court sent a footnote. Judge Wu sent a footnote. This is the strongest argument I've heard, but the plaintiffs have never had a chance to respond to it. He said that in the in his decision, and he said that he would have to undertake a further briefing. The parties in that case then dismissed it to allow this case to go up on appeal. One last question from me on the merits of the equal protection claim. How does the fact that the $100 fee can be reimbursed upon a successful lien claim affect your equal protection argument? It doesn't have any effect on the equal protection argument. None? Not even a little? Zero. You're unwilling to yield any ground on that? It has zero effect because there's no evidence it's ever been successfully used, ever. And why? Because it's so limited. It's like an offer of judgment. You have to make a comprehensive written offer to settle, which includes penalties and interest. Listen to this. Then you have to prevail in an amount that exceeds that number, but when they calculate what you've your prevail number on, interest gets deducted. I would urge the Court to look at the statute and to see what a joke, what a mockery they've made of that. And I apologize if that's not in the briefs, but it's unbelievable. And then they come in here, well, you get your money back if you win. No, no, no. You have to jump through a lot of hoops. Now, what about the plaintiffs here? We have plaintiffs with 20,000 liens. How are they supposed to go through all 20,000, calculate exactly what they should for an offer of settlement, send 20,000 letters to the insurers? It's an impossibility. It is a joke. The district court denied the defendant's motion to dismiss as the equal protection claim, so you'll not get a chance to address them the merits if we uphold that denial, right? All right. You've got a couple of minutes left. Would you like to save that for rebuttal? Yes, please. Just a few points, Your Honors. With respect to the argument about the strict scrutiny versus rational basis, we have the United States v. Cross case and other cases that have held a filing fee in light of an indigent party, and this is unlike the cases where you're talking about an indigent prisoner who is trying to challenge his sentence or challenge his conditions of confinement, unlike the case in the United States versus the body case in which the issue of access to family law for a divorce, which is the only means of adjudicating that issue, were at issue. So it's clear here that rational basis is what applies. With respect to the vested property interest, Bowers, as I was discussing before, held that a cause of action is not vested until it is reduced to a final judgment, and that is the same situation that we have here. Plaintiffs cited to Kazia v. Pan Am as being their strongest case. That was dicta in that case. That case was remanded, and as a matter of fact, it's contrary to what this Court held in Bowers. Kagan. I think we've got your arguments, Counselor. You're over time. I appreciate it. Thank you. The defendant's argument that we're trying to extend cases like Bounce. Bounce is the case where someone, a woman wanted to get a divorce, and she didn't have the money to pay the filing fee. And the Court said, come on, we need to let people into court when they can't afford to pay the filing fee for things of that nature. Let's talk about what Bounce was. It was a nondiscriminatory statute, a statute that applied to everyone. Everyone had to pay the fee to get a divorce. And the Court said, sometimes we have to make exceptions so that we're not depriving people of access to the courts. This case is not an extension. We're not asking you to extend Bounce. We're presenting a case that's easier than Bounce. It's simpler. It is a hornbook case of a constitutional violation. Why? Because this is a discriminatory statute that affects the exercise of a fundamental right. This is not, it is almost, and I apologize if we didn't make this clear in the briefing, but the idea that we're somehow extending cases like Bounce and Payne, we're not doing that at all. All of those cases, all of them, involve fees that apply uniformly to everyone, nondiscriminatory. And the Court said, sometimes we still have to make an exception for indigents. This is a case of overt discrimination. I can't find a single example of a case like this before. Could you imagine if this Court imposed a filing fee for new appeals, but exempted insurance companies and corporations and labor unions? There'd be blood in the streets, and properly so. And the Supremes would throw it out so fast, heads would spin. And that's what this case is. I'm sorry we didn't make it clear before. But there's no question that strict scrutiny should apply. This is hornbook law. Overt discrimination in the exercise of your right to get judicial relief. To have your claims for compensation adjudicated. To have your property rights vindicated. Turning to the property interest issue. Again, this case should not be decided on the ground that there's no property interest. And $6 billion worth of workers' compensation liens that people detrimentally relied upon and gave their whole lives to create. To wipe out businesses' accounts receivable because there's some contingencies to recovery on that. There are always contingencies to recovery on accounts receivable, or liens. Liens, you still have to prove the underlying claim if it's disputed. The fact you have a security interest doesn't mean that you just get your money. Contingency is not the issue. The issue is the circumstances. And here there was consideration, and here there was a promise, and here there was detrimental reliance. And all of those factors say that this is a property interest. The Court can still come back and say, maybe it's not a taking. Can I just ask you one question? The scope of this is the retroactive application? Correct. You're not challenging for the future? We have not challenged the filing fee prospectively. Only the retroactive application on liens that are going back 10 years. All right. Thank you very much, counsel. Thank you. Thank you both for your arguments. All right. We will recess for today. Thank you.
judges: Zouhary, Schroeder, Nguyen